UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| URIEL JOSE ORTEGA,<br><br>Movant,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | Civ. Case No.  4:17-cv-00529-BLW<br>Cr. Case No.   4:14-cr-00255-BLW<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

## INTRODUCTION

Before the Court is Uriel Jose Ortega's Motion to Vacate, Set Aside or

Correct Sentence Pursuant to 28 U.S.C. § 2255. Ortega says his conviction should

be vacated because he received ineffective assistance of counsel at all stages of his

criminal case. This Court previously denied the majority of his claims. *See* Civ.

Dkt. 52; Cr. Dkt. 110.[1] He has one remaining claim, in which he argues that plea

counsel, Nathan Rivera, rendered ineffective assistance in three separate ways: (1)

by overstating the applicable mandatory-minimum sentence Ortega would face if

he insisted on proceeding to trial; (2) by seriously underestimating the predicted

---

[1] Citations to "Civ. Dkt." refer to docket entries in the above-captioned civil case, and citation to "Cr. Dkt." refer to docket entries in the above-captioned criminal case.

sentence upon a guilty plea; and (3) by incorrectly advising Ortega about the risk of being deported. For the reasons explained below, the Court will deny Ortega's remaining claim and decline to issue a certificate of appealability. The Court will also deny Rivera's motions to reconsider. *See* Cr. Dkts. 115, 124.

## BACKGROUND & FACTUAL FINDINGS

In March 2022, the Court conducted an evidentiary hearing on the three issues just identified. Afterward, the parties supplemented the record and submitted additional briefing. After having heard this evidence, as well as having considered the entire record in this matter, the Court finds as follows regarding the key factual disputes at issue:

 (1) Rivera advised Ortega that if he were not a citizen, he would be deported if he pleaded guilty to either charge in the indictment.

(2) Rivera informed Ortega that he would face a 25-year, mandatory-minimum sentence if he stood trial and was convicted on either charge in the indictment. In making that prediction, however, Rivera was accounting for the fact that the prosecutor had threatened to seek two enhancements if Ortega decided to stand trial: (1) he would file an information under 21 U.S.C. § 851 subjecting Ortega to enhanced punishment based upon his prior drug conviction; and (2) he would seek a superseding indictment including a firearm charge under 18 U.S.C. § 924(c). These two enhancements would have increased the mandatory minimum

to 25 years. If, on the other hand, Ortega pleaded guilty to either charge in the indictment, the prosecutor agreed not to seek the enhancements.

(3) Before Ortega pleaded guilty, Rivera explained how he had calculated the 25-year mandatory minimum Ortega could potentially face if he stood trial. In other words, Rivera explained to Ortega that if he decided to proceed to trial, the prosecutor intended to (1) seek a superseding indictment alleging a charge under 18 U.S.C. § 924(c) and (2) seek enhancements based upon his prior drug conviction under the process outlined in 21 U.S.C. § 851. Rivera further explained that Ortega could avoid these potential enhancements by pleading guilty to one of the charges in the indictment.

(3) Before Ortega was sentenced, Rivera advised Ortega that he could face around seven to nine years in prison. But Rivera made that prediction in the context of Ortega having agreed to render substantial assistance to the government. And although Ortega never actually provided substantial assistance, he agreed to do so when he pleaded guilty.

Having resolved these factual disputes, the Court will back up and provide a more complete background statement.[2]

---

[2] Portions of this section are taken from the Court's earlier decision in this matter. *See* Civ. Dkt. 52; Cr. Dkt. 110. At times, the Court has fleshed out this section with additional detail (Continued)

### 1. The Indictment & The Motion to Suppress

On November 25, 2014, Ortega was charged in a two-count indictment with conspiracy to distribute a controlled substance and possession with intent to distribute a controlled substance. The indictment stemmed from a July 2014 traffic stop where Ortega was a passenger in the car. Police found three firearms and 1.3 kilograms of methamphetamine in the car. Cr. Dkt. 29, at 3. During the stop, Ortega told one of the officers that he owned the gun found in the lockbox in the trunk. *See Aff.*, Civ. Dkt. 91-1, at 19. Additionally, while Ortega and the driver were secured in the back seat of a patrol car during the stop, they were recorded talking about the methamphetamine and the guns. *See Aff.*, Civ. Dkt. 91-1, at 3.

After he was indicted, Ortega moved to suppress evidence of the firearms and methamphetamine, arguing that his Fourth Amendment rights were violated during the traffic stop. *See Mtn. to Suppress*, Cr. Dkt. 17. The Court denied the motion, and Ortega then asked his aunt to help him retain new counsel. *See* Cr. Dkt. 77, at 88; *Motion Mem.*, Civ. Dkt. 7-3, at 41.

### 2. Ortega's Meetings with Rivera

Shortly afterward, attorney Nathan Rivera met with Ortega at the county jail.

---

relevant to the issues addressed here. At other times, the Court has omitted background information laid out in the earlier decision, as that information is not directly relevant to the issues currently before the Court.

Ortega told Rivera he wanted to take the case to trial. Rivera agreed to do so and substituted in as new counsel after Rivera's aunt agreed to pay his fees. Civ. Dkt. 7-3, 4-42.Civ. Dkt. 7-2, at 2.

Over the course of his representation, Rivera met with Ortega seven or eight times. One such meeting took place on May 12, 2015. At that meeting, Rivera delivered a letter to Ortega, which included the following verbiage:

> Pursuant to recent conversations with you, I wanted to follow up regarding your decision to move forward with trial. As discussed on numerous occasions, given the charges that you have and the amount of evidence against you, you're looking at a mandatory minimum of 25 years should you be convicted, regardless of whether you are convicted of conspiracy or on the possession charge. In addition, the guidelines range could be in the 30 year range based on aggravating factors and your criminal history.
>
> The government has offered a plea agreement whereby you would avoid the additional mandatory minimums, with the possibility of departure below the mandatory minimum on the conspiracy charge. Given our discussion about your past criminal history and the current charges, you are looking at a potential sentence in the 14 year range, with the possibility of the judge departing below the guidelines ranges during sentencing. Although that does not happen often, this agreement at least does not foreclose the possibility, but at least allows you to avoid those heavy mandatory minimum enhancements.
>
> Furthermore, the costs of trial are very expensive. I would note you are currently $2000.00 behind on our agreed upon initial retainer of $5000.00 An additional sum of $5000.00 is required, as we have discussed, in order to adequately prepare, and move forward with the trial. Therefore, I will need the sum of

$7000.00 immediately paid to my office.

Having stated that, I would note that I have given you copies of
the sentencing guideline ranges, a breakdown of how the
criminal history points are calculated, as well as a breakdown of
your criminal history level, given your past history, in addition
to walking you through, and explaining each item to you.
Having reviewed all of the potential possibilities, I also want to
note in writing that you have decided to go against my advi[c]e
and proceed forward to trial, knowing full well the potential
penalties, which are significant.

*See May 11, 2015 Letter*, Civ. Dkt. 90-1.

Roughly three weeks after receiving that letter, Ortega pleaded guilty.

Rivera and Ortega do not agree on what happened during that three-week period in

terms of Rivera's sentencing predictions. Ortega says that when he turned down

the plea deal outlined in the May 11 letter, Rivera returned to the jail the following

week and told him he had re-calculated Ortega's likely sentence for a plea deal; he

now said the guidelines range would be 87 to 108 months (roughly seven to nine

years). Additionally, Ortega says Rivera assured him—guaranteed him, in fact—

that he would not be deported if he pleaded guilty to either offense in the

indictment. *Hearing Tr.* at 18:1 to 19:7, Civ. Dkt. 107.

Rivera categorically denies advising Ortega that he would not be deported,

and, as stated above, the Court finds that Rivera did indeed advise Ortega that if he

were not a citizen, he would be deported if he pleaded guilty to either offense in

the indictment. As for the sentencing prediction, Rivera says that after that May 12

meeting—right before Ortega pleaded guilty—he informed Ortega that his predicted guidelines range could be up to 20 years.

The Court does not need to resolve all aspects of the dispute related to Rivera's sentencing predictions because during the change-of-plea hearing, the Court plainly and repeatedly advised Ortega that he faced a 10-year, mandatory-minimum sentence of imprisonment and that he could be sentenced to up to life in prison. The Court will, however, resolve one issue relating to Ortega's allegation that Rivera advised him that his sentencing guidelines could be in the seven-to-nine year range. As noted above, the Court finds that while Rivera did indeed predict that Ortega might receive a sentence in the seven-to-nine year range, that advice was given in the context of Ortega agreeing to provide substantial assistance to the government. This conclusion is bolstered by the plea agreement, which contains cooperation language.

### 3. The Guilty Plea

Ortega's change-of-hearing plea began on June 1, 2015. At this hearing, Ortega explained to the Court that he wanted to take the plea deal, but did not fully understand its terms and that Rivera, whose partner appeared for him at this hearing, was not taking Ortega's phone calls. *Hearing Tr.*, Cr. Dkt 78, at 2–3. During that hearing, the Court informed Rivera that he would face a 10-year mandatory-minimum sentence if he pled guilty, and that he could face up to life

imprisonment. Here is the relevant portion of the transcript:

> ***In this case, what you will be pleading to is a case which carries with it a 10-year mandatory minimum sentence. So you will be looking at 10 years in prison no matter what else happens.*** So this isn't a case where that should be -- there should be any uncertainty in your mind. And if you were to enter a plea today, I'll make crystal clear that you understand that.
>
> There is not a lot of mystery about this charge. ***Because of the quantities involved, it's a 10-year mandatory minimum up to life imprisonment.*** Now, what the guidelines may say – the guidelines might be a lot longer if you have prior convictions, if you have a criminal record, if there are other enhancing features in this case. ***But, at a minimum, you're looking at 10 years in prison. So you need to understand that.***

*June 1, 2015 Hearing Tr.*, Cr. Dkt. 78, at 4:16 to 5:4 (emphasis added). After providing these warnings, the Court continued the hearing to the next day, so that Ortega would have enough time to understand the plea agreement and decide whether he wished to plead guilty, proceed to trial, or change counsel. *Id.* at 5–9.

The plea hearing resumed the next day. In the plea colloquy with the Court, Ortega confirmed that: (1) he had had enough time to discuss the plea agreement with his attorney; (2) he was satisfied with his attorney's representation; and (3) he wanted to proceed with the change of plea based upon the plea agreement. *Hearing Tr.*, Cr. Dkt. 55, at 3. Also, the Court advised Ortega that his plea of guilty would affect his ability to remain in the United States legally. *Hearing Tr.*, Cr. Dkt. 55, at 19. And, the Court again informed Ortega that if he pleaded guilty, he faced a 10-

year mandatory minimum and a potential sentence of up to life imprisonment. *See Id.* at 11–14.

Ortega was a very active participant during the hearing. At one point, he asked the Court if he might receive a sentence of less than 10 years. The Court responded by telling him that there are essentially two circumstances under which he could obtain relief from that mandatory minimum—by operation of the safety valve or by cooperating with the government. *See id.* Ortega said he understood that unless one of these two circumstances applied, he would face a 10-year mandatory minimum. *See id.* at 11–13. The Court then accepted his guilty plea.

### 4. The Motion to Withdraw the Guilty Plea & Sentencing

A few weeks after Ortega pleaded guilty, the Court granted Rivera's motion to withdraw as counsel and directed the clerk to appoint a new attorney for Ortega. Ortega's new attorney filed a motion to withdraw the guilty plea. In that motion, Ortega argued he should be allowed to withdraw his plea for various reasons, including that: (1) Rivera had miscalculated his criminal history points; (2) Rivera had failed to advise Ortega there would be a potential sentencing enhancement for possession of a firearm; and (3) Ortega did not understand he was pleading guilty to a conspiracy to distribute methamphetamine. *See Motion,* Cr. Dkt. 50, at 1–2.

The Court denied Ortega's motion to withdraw the guilty plea and sentenced him to 264 months in prison, which was a below-guidelines sentence. The Court

calculated Ortega's guidelines range as 324 to 405 months, based on an adjusted

offense level of 38 and a criminal history category of IV. The guidelines

calculation for the offense level looked like this:

| Court's Guidelines calculation for Ortega's offense level | |
|---|---:|
| Base Offense Level – § 2D1.1(c)(3) | 34 |
| Firearm Enhancement – § 2D1.1(b)(1) | +2 |
| Obstruction-of-Justice Enhancement – § 3C1.1 | +2 |
| Acceptance of Responsibility – § 3E1.1(a) & (b) | 0 |
| Substantial Assistance – § 5k1.1 | 0 |
| Total Offense Level | 38 |

In the final presentence investigation report (PSR), the probation officer

calculated the guidelines range as 235 to 293 months, based on a criminal history

category of VI and a total offense level of 33 (rather than 38). *See Dec. 11, 2015

PSR,* Dkt. 59, ¶ 81. Earlier PSRs had mistakenly undercalculated the guidelines

range by using the guidelines applicable to methamphetamine mixture, rather than

those applicable to pure methamphetamine. *See, e.g., July 7, 2015 PSR*, Cr. Dkt.

38, ¶ 81 (calculating the guidelines range at 151 to 188 months, based on a total

offense level of 29 and criminal history category of VI); *see also* Cr. Dkts. 40, 43.

The five-level difference in the total offense level of 33 in the final PSR,

compared to the total offense level of 38, is based on two things: First, the

probation officer anticipated a three-level decrease for acceptance of responsibility,

but the Court independently found that defendant had not accepted responsibility.

*See Tr.*, Cr. Dkt. 82 at 47:9 to 48:4. Second, the probation officer did not apply a two-level enhancement for obstruction of justice. At sentencing, the Court overruled Ortega's objections to the firearm enhancement and the obstruction-of-justice enhancement. *See Dec. 22, 2015 Tr.*, Cr. Dkt. 82, at 20:10 to 25:25.

### 5.  Ortega's Appeal

On appeal, Ortega argued that his plea was not knowing and intelligent. Among other things, he argued that was misled as to the operation of the sentencing guidelines specific to his criminal history and whether he would be entitled to an adjustment for playing a minor role in the offense. The Ninth Circuit dismissed Ortega's appeal in light of the appeal waiver in the plea agreement. *See Apr. 24, 2017 Order*, Cr. Dkt. 90. The circuit held that "the record does not support Ortega's contentions that his plea was involuntary or that the government breached the plea agreement." *See Apr. 24, 2017 Order*, Cr. Dkt. 90. The Ninth Circuit also declined to address Ortega's claim for ineffective assistance of counsel. *See Apr. 24, 2017 Order*, Cr. Dkt. 90 ("To the extent Ortega seeks to raise a claim of ineffective assistance of counsel, we decline to address this issue on direct appeal.") (*citing United States v. Rahman*, 642 F.3d 1257, 1259–60 (9th Cir. 2011)).

### 6.  The § 2255 Motion

In his pending § 2255 motion, Ortega says counsel provided ineffective

assistance at various points during the proceeding—from plea negotiations through appeal. As noted above, the Court denied most of these claims in an earlier order. *See Feb. 2, 2021 Order,* Civ. Dkt. 52, Cr. Dkt. 110. In his one remaining claim, Ortega asserts that Rivera rendered ineffective assistance of counsel. Three aspects of this claim still need to be resolved.

## LEGAL STANDARD

Under 28 U.S.C. § 2255, a court may grant relief to a federal prisoner who challenges the imposition or length of his or her custody on the following grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such a sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" and (4) that the sentence is otherwise "subject to collateral attack." Ortega challenges his sentence under the first ground for relief: He says attorney Nathan Rivera committed errors that led him to plead guilty and that, but for these errors, he would have insisted on a trial. Ortega has the burden of proving the factual contentions underlying his motion by a preponderance of the evidence. *See generally Farrow v. United States*, 580 F.2d 1339, 1355 (9th Cir. 1978); *cf. Sanford v. Dwyer,* No. 4:04CV1704-JCH, 2006 WL 1520626, at *3 (E.D. Mo. May 30, 2006) (concluding, in a § 2254 proceeding, that petitioner failed prove by a preponderance that his attorney had misled him into pleading guilty).

More generally, the contours of ineffective-assistance-of-counsel claims are well defined. "The Sixth Amendment guarantees a defendant the effective assistance of counsel at 'critical stages of a criminal proceeding,' including when he enters a guilty plea." *Lee v. United States*, 582 U.S. 357, 363 (2017) (citing *Lafler v. Cooper*, 566 U.S. 156, 165 (2012)). To demonstrate that his attorney was constitutionally ineffective, Ortega must show that Rivera's representation "fell below an objective standard of reasonableness" and that he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 688 (1984).

When evaluating an attorney's performance, there is a strong presumption that it falls "within a wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. That is because, for the defendant, "[i]t is all too tempting . . . to second-guess a counsel's assistance after conviction or adverse sentence . . ." *Id.* And for the Court, "it is all too easy to conclude that a particular act or omission by counsel was unreasonable in the harsh light of hindsight." *Bell v. Cone*, 535 U.S. 685, 702 (2002).

Claims of ineffective assistance of counsel often involve claims that an attorney erred "'during the course of a legal proceeding'—for example, that counsel failed to raise an objection at trial or to present an argument on appeal." *Lee*, 582 U.S. at 364. In that context, defendants demonstrate prejudice by showing a "reasonable probability that, but for counsel's unprofessional errors, the result of

a proceeding would have been different." *Roe v. Flores-Ortega*, 528 U.S. 470, 482 (2000). But, as is the case here, "when a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Lee*, 582 U.S. at 364-65 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). In these situations, the defendant doesn't have to show he would have been better off going to trial. *See id.* Rather, the analysis focuses on the defendant's decision-making process because, in the usual case, a comparative-risk analysis will drive a defendant's decision-making process when a plea is offered. *See generally id.* at 367 ("The decision whether to plead guilty also involves assessing the respective consequences of a conviction after trial and by plea."). As one court explains, "When a plea offer is made, 'knowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty.' Accordingly, the lawyer 'should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed.'" *Carrion v. Smith*, 644 F. Supp. 2d 452, 465 (S.D.N.Y 2009) (citing *Purdy v. United*

*States*, 208 F.3d 41, 45 (2d Cir. 2000)).[3]

# ANALYSIS

Ortega asserts that Rivera made three key errors that ultimately prompted him to plead guilty when he otherwise would have insisted on a trial. The first error deals with the risks of standing trial. Ortega says Rivera overstated this risk by telling him that he faced a 25-year mandatory minimum if he were convicted on either charge, when, in fact, he actually would have faced a 10-year mandatory minimum. The remaining alleged errors deal with the other side of the ledger—the risks of pleading guilty. Ortega says Rivera understated these risks by telling him he wouldn't be deported if he pleaded guilty and by telling him that his expected guidelines range was much lower than the actual guidelines range and the sentence

---

[3] *See also Lee*, 582 U.S. at 367 (explaining that "a defendant with no realistic defense to a charge carrying a 20-year sentence may nevertheless choose trial, if the prosecution's plea offer is 18 years"); *United States v. Bui*, 795 F. 3d 363 (3d Cir. 2015) (counsel's erroneous advice that defendant was eligible for safety valve relief was deficient performance); *Cooks v. United States*, 461 F.2d 530, 532 (5th Cir. 1972) (guilty plea invalid where counsel wrongly advised defendant that he would face a sentence six times more severe than the law allowed); *United States v. Marcos-Quirogo*, 478 F. Supp. 2d 1114 (N.D. Iowa 2007) (defendant satisfied the deficient-performance prong where counsel failed to advise him that he would be sentenced as a career offender); *United States v. Gaviria*, 116 F.3d 1498 (D.C. Cir. 1997) (counsel performed deficiently by wrongly telling defendant he would be sentenced as a career offender); *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992) ("[F]amiliarity with the structure and basic content of the Guidelines (including the definition and implications of career offender status) has become a necessity for counsel who seek to give effective representation."); *cf. United States v. Manzo*, 675 F.3d 1204, 1208-10 (9th Cir. 2012) (finding deficient performance where counsel incorrectly anticipated that defendant's offenses would be grouped for sentencing; because they were not grouped, defendant faced a sentencing range of 292 to 365 months, rather than the expected range of 135 to 168 months).

he actually received.

### A. Counsel's Advice Related to the Potential 25-Year Mandatory Minimum Sentence Ortega Would Face if he Stood Trial

The Court will begin with the advice Rivera gave about the risks of standing trial. The mandatory minimum for each crime in the indictment is 10 years—not 25. *See* 21 U.S.C. § 841(b)(1)(A). Rivera acknowledges this, but testified that he correctly advised Ortega that he would face a 25-year mandatory minimum because the prosecutor was planning to seek an enhancement under 21 U.S.C. § 851 and to indict on a charge under 18 U.S.C. § 924(c). The § 851 enhancement would have doubled the 10 years, and a § 924(c) charge would have added a mandatory five-year consecutive sentence. Rivera says his contemporaneous notes reflect this calculation. *See Rivera Dec.*, Civ. Dkt. 38-5, ¶ 6; *see generally* 21 U.S.C. § 841(a)(1)(A); 21 U.S.C. § 851; 18 U.S.C. § 924(c). Rivera also says that although he didn't detail these precise calculations in his written communications with Ortega, he did, in fact, orally explain these details to Ortega. The Court finds that testimony credible.

Rivera also credibly testified that the prosecutor threatened to both (1) seek an enhancement under § 851 enhancements; and (2) bring § 924(c) charge. He testified as follows during the evidentiary hearing:

> Q:   So how did you come to believe that the mandatory minimum would be 25 years?

A:    So initially when I began representing Mr. Ortega, I had discussions with Mr. Fica [the prosecutor]. And to be quite frank, Mr. Fica was kind of fed up at that point with the case, is the impression I got.

He came right out of the chute and said you have to this deadline —May 27th, I believe—to either agree to a deal, or I'm going to file a superseding indictment. I'm going to include an 851 enhancement and 924(c).

The 851 would have doubled the mandatory minimum to 20 years, and the 924(c) would have been stacked on top of that, resulting in a 25-year mandatory minimum.

*Mar. 1, 2022 Hearing Tr.*, Civ. Dkt. 107, at  63:18 to 64:3.

Accordingly, when Rivera calculated the risks of facing trial, he would need to evaluate the strength of that threat and advise Mr. Ortega accordingly. In other words, to perform competently, Mr. Rivera would need to look into both issues to determine if Mr. Ortega could truly face a 25-year mandatory minimum, or if these were empty threats.

At the evidentiary hearing, Rivera admitted that he did not independently investigate the basis for the § 851 enhancement. Instead, he simply relied on the prosecutor's assertions. *See Hearing Tr.,* Civ. Dkt. 107, at 64:24 to 65:13 & 105:19 to 108:3. Rivera's failure to investigate the basis for an enhancement that would have increased Ortega's mandatory minimum sentence by 10 years if he were convicted after a trial is objectively deficient performance under the first prong of *Strickland*. But Ortega was not prejudiced by this deficient performance because

he did, in fact, have a qualifying felony and because there was ample evidence to

bring a § 924(c) charge.

### The § 851 Enhancement[4]

Ortega argues that he did not have a qualifying felony offense and thus

would not have been subjected to a doubling of the otherwise applicable 10-year

mandatory minimum if he had insisted on a trial. But at the time Rivera rendered

his advice, Ortega did have a felony drug conviction in Montana.

Ortega was charged in this case under 21 U.S.C. § 841(b)(1)(A) (2018). At

the time of his arrest and conviction, that statute provided for a mandatory-

minimum sentence of 10 years, which could be doubled to a 20-year mandatory

minimum if the defendant had a prior conviction for a "felony drug offense." *See*

21 U.S.C. § 841(b)(1)(A)(2018).[5]

At the time he was convicted, the statutory definition of "a felony drug

offense" under § 841(b) was "any offense that is *punishable* by imprisonment for

more than one year under any law in the United States or of a state or foreign

_____

[4] The enhancement—a doubling of the 10-year mandatory minimum, is actually provided for in 21 U.S.C. § 841—not 21 U.S.C. § 851. Section 851 merely lays out the procedure by which these enhancements are sought. The prosecutor must file an information containing the predicate offenses either before a guilty plea or before trial. Still, though, the parties have referred to these enhancements as "§ 851 enhancements," and the Court will follow suit.

[5] In 2018, § 841 was amended by the First Step Act, which reduced this enhancement to a 5 years. *See* 21 U.S.C. § 841(b)(1)(A).

county that prohibits or restricts conduct relating to the narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." *See* 21 U.S.C. § 802(44) (emphasis added). They key phrase for purposes of this discussion is whether the offense was "*punishable*" by more than one years' imprisonment.

### The Montana Conviction

In May 2013—around 18 months before he was indicted in this case—Ortega pleaded guilty to "Criminal Possession of Dangerous Drugs (felony) in violation of § 45-9-102 MCA." *See Montana Sentence & Judgment*, Civ. Dkt. 91-2. The Montana court sentenced Ortega to 273 days in county jail and gave him credit for 273 days of time served. *See Sentence and Judgement*, Civ. Dkt. 91-2.

Ortega makes much of the fact that he was sentenced to less than a year. But the Montana statute of conviction authorized the sentencing judge to sentence him to up to three years' incarceration. In other words, and returning to the verbiage of 21 U.S.C. § 802(44), the Montana possession offense was "punishable" by more than a year. That would seemingly end the matter, but Ortega argues that because he was convicted under a "wobbler" statute, and because he was ultimately sentenced to less than one year, the Court should conclude that the offense doesn't qualify as a prior felony after all. The Court is not persuaded.

Ortega was convicted under Montana Code § 45-9-102(2), which at the time said that a person convicted on a second or subsequent offense of possession of 60

grams or less of marijuana "is punishable by a fine not to exceed $1,000 or by imprisonment in the county jail for a term not to exceed 1 year or in the state prison for a term not to exceed 3 years or both." Mont. Code Ann § 45-9-102(2). Because the provision includes a one-to-three year sentence range, it "wobbles" between a misdemeanor and a felony.

Here, there is no dispute that at the time Ortega pleaded guilty to this possession offense, he had one or more previous convictions for possession. *See* Civ. Dkt. 90-8, Ex. 5. Still though, Ortega argues that because he was actually punished by a sentence of one year or less, this conviction doesn't qualify as a predicate felony offense for a § 851 enhancement. As support for this argument, Ortega relies upon a line of Ninth Circuit cases holding that a person's actual punishment—as opposed to their potential punishment—is relevant in deciding whether a prior conviction should be treated as a "felony" in federal sentencings. *See, e.g., United States v. Valencia-Mendoza,* 912 F.3d 1215 (9th Cir. 2019); *United States v. Bridgeforth,* 441 F.3d 864 (9th Cir. 2006).

But the Ninth Circuit cases Ortega relies upon are inapplicable. Broadly stated, this line of cases establishes the following points: If (1) a person charged under a state wobbler statute is ultimately sentenced to one year or less *and* (2) the state itself subsequently treats that conviction as a misdemeanor "for all purposes" *then* (3) the federal courts must honor that treatment and do the same thing when

deciding whether a prior conviction is a prior "felony" offense for purposes of imposing sentencing enhancements. *See, e.g., Bridgeforth,* 441 F.3d at 871-72. A related case holds that if a state sentencing judge did not actually have discretion to sentence a defendant to one year or more, then the phrase "punishable by" means the maximum sentence that was available under the mandatory sentencing guidelines—not the maximum sentence that was available under the charging statute. *See United States v. Valencia-Mendoza*, 912 F.3d 1215, 1223 (9th Cir. 2019).

These holdings do not help Ortega. Even assuming they apply in this context, they are distinguishable. First, many of these cases deal with a unique feature of California statutory law: California Penal Code § 17. Under California Penal Code § 17, if a defendant is convicted under a wobbler statute, and certain other conditions are met—such as that the defendant was sentenced to less than a year—then the statute requires that the crime be treated as "a misdemeanor *for all purposes* . . . ." *See* Cal. Penal Code § 17(b) (emphasis added). Construing the effect of that California statute in the context of deciding whether district courts may apply sentencing enhancements involving prior state felony convictions, the Ninth Circuit has held that if the requirements of California Penal Code § 17 are met, then the convictions must be treated as misdemeanors. *See, e.g., United States v. Bridgeforth,* 441 F.3d 864, 871 (9th Cir. 2006) (concluding that the defendant's

prior state conviction under a wobbler statute was a misdemeanor under California Penal Code § 17(b)(1) and did not qualify as a predicate felony for purposes of the career offender enhancement); *United States v. Robinson*, 967 F.2d 289, 292-293 (9th Cir. 1992) (holding that defendant's prior conviction under a wobbler statute qualified as a felony because the wobbler did not meet the requirements of California Penal Code § 17(b)).

Ortega argues that under these cases, this Court should treat his conviction as a misdemeanor. As he puts it, "Like in *Bridgeforth*, Mr. Ortega's sentence should be treated like a misdemeanor for all purposes because his sentence of a wobbler statute was for county time only for less than one year." *Supp. Br.*, Civ. Dkt. 103, at 5–6. But the *Bridgeforth* line doesn't apply here because Montana doesn't have an analogue to California Penal Code § 17. Rather, the question the Court would ask under this line of cases is, How did Montana treat Ortega's conviction? That question is easily answered. As the government has pointed out, numerous Montana state court documents clarify that Montana views the conviction as a felony. Among other things:

(1) Ortega's May 12, 2013 plea agreement reflects that he agreed to plead guilty to "Criminal Possession of Dangerous Drugs, **(felony)** in violation of § 45-9-102 MCA (2013)." *See* Civ. Dkt. 92-1 (emphasis added).

(2) A related May 14, 2013 acknowledgment indicates that Ortega was advised that the maximum penalty for the charge—identified as

"Criminal Possession of Dangerous Drugs **(Felony)**—was "3yrs to MSP [Montana State Prison] + 1,000 fine." Civ. Dkt. 92-2, at 1 (emphasis added).

(3) The May 30, 2013 Montana judgment explicitly states that Ortega was convicted of "Count II: Criminal Possession of Dangerous Drugs **(felony)** in violation of § 45-9-102, MCA." Civ. Dkt. 91-2, at 3-4 (emphasis added).

(4) The minutes from the May 14, 2013 change of plea hearing state, "The defendant now pleads GUILTY to Count II, Criminal Possession of Dangerous Drugs, **Felony**. Civ. Dkt. 91-2, at 5 (emphasis added).

(5) In November 2019, a Montana district court denied Ortega's pro se petition for expungement of his conviction, explaining that even if expungement were available, it could only expunge misdemeanor convictions and thus would be "unable to expunge Ortega's **felony** conviction" Civ. Dkt. 91-3, at 1 (emphasis added).

In short, Montana courts consistently treated Ortega's conviction as a felony, and Montana does not have a statute similar to California Penal Code § 17. As such, this Court has no basis to conclude that Ortega's 2013 Montana conviction was anything but a prior, qualifying felony conviction. *See United States v. Fitzgerald*, 935 F.3d 814, 816 (9th Cir. 2019) (rejecting defendant's argument that his prior conviction under a Nevada "wobbler" statute was a misdemeanor because "it is clear that the state court treated his conviction as a felony").

Similarly, Ortega cannot successfully avail himself of holdings such as *United States v. Valencia-Mendoza*, 912 F.3d 1215 (9th Cir. 2019) because the Montana state judge had discretion to sentence him to up to three years'

incarceration.

For all these reasons, Ortega's 2013 Montana conviction was a qualifying felony conviction. Thus, even though Ortega's attorney had not done the legwork to ensure this was so, his conclusion was correct: The prosecutor easily could have made good on his threat to seek a § 851 enhancement as there was a qualifying prior felony offense. Rivera thus faced a potential doubling of the 10-year mandatory minimum if he insisted on proceeding to trial.

### The July 14, 2014 Fax Cover Sheet

To shore up his argument on this front, Ortega points to a July 14, 2014 fax cover sheet, which relates to the 2013 Montana conviction. The sender on this fax cover sheet is listed as David H. Sibley (over the letterhead of the Big Horn County, Montana Attorney's Office) and the intended recipient is listed as someone named "Taylor." The person sending this fax included a typewritten note including this typewritten statement: "Taylor/Penny, here is the Sentence and Judgment on Mr. Ortega." Civ. Dkt. 91-2, at 1. Beneath the typewritten sentence is the following, handwritten note:

> 7/14/14—I talked with Dave Shipley—this is actually a
> misdemeanor conviction, they caught him w/pot up there. So,
> no felon in possession of firearm. Changed his mind—will go
> check the minutes + compare with Info—he will call me—it
> <u>may</u> be a felony, still looking . . .

*Id.* There are a number of problems with relying on this handwritten note to

conclude that the 2013 conviction was actually a misdemeanor. For starters, we don't even know who wrote that note. Moreover, the note doesn't ultimately answer the question. That is, even assuming Mr. Sibley *initially* thought the 2013 conviction might have been a misdemeanor conviction, he obviously had second thoughts—ultimately saying that it "it *may* be a felony, still looking . . . ." *Id.* And then it's not clear what happened, or what he thought after "looking" further. Plus, at the end of the day, what one prosecutor might think about a conviction cannot trump what that conviction actually is—as set forth in the state court judgment and as subsequently confirmed by the Montana courts.

### The Expungement

One final note about Ortega's 2013 Montana felony conviction: Around the same time Ortega was informing this Court he didn't have a prior qualifying felony conviction here, he was petitioning the Montana Counts, pro se, to expunge his felony conviction. And in January 2023, during the pendency of this § 2255 proceeding, the Montana Courts expunged the conviction. *See Jan. 12, 2023 Order Granting Pet'n for Expungement*, Civ. Dkt. 109-1. That expungement is not relevant here, however, given that the question before the Court relates to the advice Ortega's counsel rendered in 2015. *See generally, Strickland,* 466 U.S. at 690 (holding that to fairly assess attorney performance, courts should evaluate the conduct from counsel's perspective *at the time* the advice was rendered). At that

time, the felony conviction stood, and Rivera's advice was accurate.

The Court also notes that Ortega has filed another motion under 28 U.S.C. § 2255 related to the expungement. *See Ortega v. United States*, Case No. 4:23-cv-00218-BLW. The Court will resolve that motion separately, however, after the government has had a chance to brief the matter.

### The Threatened § 924(c) Charge

The next question is whether the prosecutor credibly threatened to bring a § 924 charge. The Court finds that he did.

Under 18 U.S.C. § 924(c), five years can be added to a defendant's sentence for firearm possession during and in relation to a drug trafficking crime. *See* 18 U.S.C.A. § 924(c)(1)(A)(i). Here, during the traffic stop that ultimately led to the federal indictment, officers discovered multiple firearms. Further, Ortega and the driver were recorded discussing the methamphetamine and the firearms while secured in the officer's patrol car, and Ortega admitted to law enforcement that he owned the revolver that was found in trunk of the car. *See Cox Aff.* at 19, Civ. Dkt. 91-1. As such, Rivera correctly added five years to his estimate of Ortega's mandatory-minimum sentence if he insisted on a trial.

In sum, Rivera correctly determined—based on threats the prosecutor had made at the time—that Ortega could potentially face a 25-year mandatory minimum sentence if he elected to proceed to trial. Thus, there was no prejudice

that flowed from this advice.

**B.     Counsel's Predicted Sentence if Ortega Pleaded Guilty**

Ortega next alleges that Rivera made various errors in calculating his

guidelines sentence, which, in turn, caused Rivera to provide him with an

inaccurate sentencing prediction.

Criminal defense attorneys are expected to provide accurate information

when counseling their clients as to the possible consequences of entering a guilty

plea. To prevail on a claim of ineffective assistance in this setting, however, Ortega

must demonstrate that plea counsel's advice was "so incorrect and so insufficient

that it undermined his ability to make an intelligent decision" about pleading guilty

versus going to trial. *Turner v. Calderon*, 281 F.3d 851, 880 (9th Cir. 2002).

Further, "a mere inaccurate prediction, standing alone, would not constitute

ineffective assistance," but the gross mischaracterization of the likely outcome" at

sentencing, "combined with . . . erroneous advice on the possible effects of going

to trial" may support a finding of deficient performance. *Iaea v. Sunn*, 800 F.2d

861, 865 (9th Cir. 1986); *see also Sopanthavong v. Palmateer*, 378 F.3d 859 (9th

Cir. 2004); *Doganiere v. United States,* 914 F.2d 165, 168 (9th Cir. 1990).

Under these authorities, Ortega's claim fails at the outset because even if

Rivera provided an inaccurate sentencing prediction, he did not combine that

prediction with erroneous advice regarding the likely effects of going to trial. *See*

*Iaea*, 800 F.2d at 865; *Doganiere*, 914 F.2d at 168. Rather, as discussed above, Rivera correctly advised Mr. Ortega that, given the potential enhancements, he risked a 25-year mandatory minimum sentence if he stood trial.

Moreover, the Court has carefully reviewed each of Ortega's arguments regarding Rivera's alleged errors in predicting a sentence, and it finds these arguments unavailing. In a nutshell, Rivera did not "grossly mischaracterize" the likely outcome at sentencing. Ortega's main argument is that Rivera initially predicted a 14-year sentencing range, but when Ortega turned down a plea deal, Rivera lowered that prediction to seven to nine years, in an effort to persuade Ortega to plead guilty. Given the 22-year sentence he ultimately received, Ortega says Rivera's seven-to-nine year prediction grossly mischaracterized the likely outcome of pleading guilty.

The Court does not find this argument persuasive because it doesn't square with all the facts. To be sure, the Court finds that during his representation of Ortega, Rivera advised Ortega that his sentence *could* fall below the 10-year mandatory minimum. But Rivera made that prediction in the context of Ortega agreeing to provide substantial assistance to the government. *See Rivera Dec.*, Civ. Dkt. 38-5, ¶ 6. Ortega denies that he ever agreed to cooperate, but the Court does not find this claim credible. Most significantly, Ortega's plea agreement contains a lengthy cooperation section, in which Mr. Ortega "promise[d] to provide truthful

and complete information of the Government . . . concerning the defendant's role and the roles of all others involved in offense-related behavior and other criminal activity." *See Plea Agmt.*, Cr. Dkt. 29, at 4. And although Mr. Ortega now claims he was "surprised" to see such a provision in his plea agreement, *Hearing Tr.*, Civ. Dkt. 107, at 27-28, 38-39, 50-51, during the change-of-plea hearing he swore, under oath, that he had read the plea agreement, his attorney had answered any questions he had about the agreement, and he fully understood its provision. *See June 2, 2015 Hearing Tr.*, Cr. Dkt. 55, at 28:2-17. As noted above, Mr. Ortega was an active participant during that plea hearing; he asked numerous questions of the Court. As such, the Court does not find it credible that he signed the plea agreement—which contained multiple paragraphs about his obligation to cooperate—without understanding that he was agreeing to cooperate.

Ultimately, Ortega did not cooperate with the government, and the government did not file any motion which would have allowed the Court to sentence Ortega to less than 10 years. Additionally, as discussed in its earlier decision, the Court did not grant Ortega with a three-point credit for acceptance of responsibility *and* the Court applied an obstruction-of-justice enhancement. For all those reasons, a below-mandatory minimum sentence did not materialize. But as the Court concluded earlier, Rivera cannot be faulted for failing to predict the five-level difference in offense levels related to acceptance of responsibility and

obstruction of justice. Further, even if Rivera did perform deficiently, there was no prejudice because the Court correctly advised Mr. Ortega of the potential sentences he would face—a minimum of 10 years and a maximum of life imprisonment.

## C.    Advice Regarding Deportation

Ortega has also alleged that Rivera failed to tell him a guilty plea for the conspiracy charge would result in automatic deportation. There is no question that if Ortega were not a citizen of the United States, he would be subject to deportation if he pleaded guilty to either charge. Convictions under 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A) are defined as an "aggravated felony" pursuant to 8 U.S.C. §§ 1101(a)(43)(B) & (U). *See Gonzales-Dominguez v. Sessions*, 743 F. App'x 808, 808 (9th Cir. 2018). An alien convicted of an aggravated felony is "conclusively presumed" to be removable under immigration law. 8 U.S.C. § 1228(c). A noncitizen convicted of an aggravated felony is not eligible for cancellation of removal. 8 U.S.C. § 1229b(a)(3). Accordingly, because the law is "'succinct, clear, and explicit' that the conviction renders removal virtually certain," Rivera was obligated to advise Ortega that if he was indeed a non-citizen, his removal would be a virtual certainty. *United States v. Rodriguez-Vega*, 797 F.3d 781, 786 (9th Cir. 2015) (citing *Padilla v. Kentucky,* 559 U.S. 356, 368-69 (2010)). If, in fact, Rivera failed to advise Ortega that he was pleading guilty to a removable offense, this would constitute deficient performance. *Cf. Lee*, 582 U.S. at 364 ("The

Government concedes that Lee's plea-stage counsel provided inadequate representation when he assured Lee that he would not be deported if he pleaded guilty.").

At the evidentiary hearing, Rivera testified that he "absolutely" advised Ortega that if he pled guilty, he would be deported. *See Tr.*, Civ. Dkt. 107, at 76:9-15. He said that although he did not put this advice in writing, he had multiple conversations with Mr. Ortega on that point. Mr. Ortega, on the other, hand, says "one of the main topics" he discussed with Mr. Rivera was the immigration consequences of accepting a plea agreement. He says he was very concerned about being deported and that Mr. Rivera said, "You know, I guarantee that you're not going to deported." *Id.* at 19:8-21; *see also id.* at 29:8-16.

Having considered this conflicting evidence, the Court finds that Rivera advised Ortega that if he were not a citizen of this country, he would be deported if he pleaded guilty to either crime alleged in the indictment.[6]  The Court is not

---

[6] This is also consistent with the Court's advisement to Mr. Ortega during the plea hearing:

> "And I have no reason to know if this is true or not, but if you're not a citizen of the United States, a felony conviction will affect your ability to remain in the United States legally in the future."

*Hearing Tr.*, Cr. Dkt. 55, at 19.

persuaded by Ortega's suggestion that it would have been illogical for Rivera to have provided immigration advice because Rivera didn't even know Ortega wasn't a citizen. *See Hearing Tr.*, Civ. Dkt. 107, at 136. On this point, Rivera credibly testified that Ortega told him he was a citizen, but that he said it in a way that caused Rivera to question whether it was true. *Hearing Tr.*, Civ. Dkt. 57-58. This testimony was consistent with statements made during the sentencing, in which sentencing counsel (attorney Kelly Kumm) indicated that it wasn't clear whether Ortega was a citizen. *See Apr. 4, 2016 Tr.*, Cr. Dkt. 82, at 27-28 ("we don't know if he's a citizen of the United States or a citizen of Mexico or maybe he has dual citizenship."). In short, the Court finds that because Rivera had some questions regarding Ortega's citizenship, he went ahead and advised Ortega that if he was not a citizen, he would be deported if he pleaded guilty to either offense. Accordingly, the Court will deny this aspect of Ortega's claim.

## D.    Motions for Reconsideration

Finally, the Court will address Ortega's pending motions for reconsideration. In two separately filed motions (both of which were filed after Ortega filed his § 2255 motion), Ortega asks the Court to reconsider its earlier decision, and allow him to withdraw his guilty plea. *See* Dkts. 115, 124.

At the outset, the Court will note that the motions are procedurally flawed. Ortega relies on Federal Rule of Civil Procedure 60(b)(6), but he cannot use a civil

procedural rule to overturn a ruling in a criminal case—particularly as judgment has already been entered in that criminal case. And as for this civil habeas proceeding, the Court has not yet entered judgment on Ortega's § 2255 motion. As such, any attempt to bring the motion within the civil case is premature. For these reasons, the Court will construe both motions as motions to amend the § 2255 motion.

### 1. Governing Legal Standard

In general, federal courts have applied Rule 15 of the Federal Rules of Civil Procedure to requests for leave to amend a Section 2255 motion. *See, e.g., Anthony v. Cambra*, 236 F.3d 568, 576 (9th Cir. 2000) (collecting cases applying Rule 15(c) to habeas proceedings). Further, appellate courts have held that federal habeas motions on which the trial court has not yet ruled are governed by Rule 15(a). *See Mayle v. Felix*, 545 U.S. 644, 654 (2005) (Section 2254); *see also In re Morris*, 363 F.3d 891, 893 (9th Cir. 2004) (noting that, where the trial court has not yet reached a final decision on a petition brought pursuant to Section 2254, Rule 15(a) applies to habeas actions with the same force that it applies to other civil cases).

Since Ortega did not amend his underlying motion within 21 days after serving it, under Rule 15, he may "amend [his] pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(1)-(2). "The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P.

15(a)(2). When ruling on a motion to amend a habeas corpus petition, courts

consider the following factors: bad faith, undue delay, prejudice to the opposing

party, futility of the amendment, and whether or not the party has previously

amended his pleadings. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). "The

party opposing amendment bears the burden of showing any of the factors above."

*Ortegoza v. Kho*, No. CV 12-00529 L, 2013 WL 2147799, at *6 (S.D. Cal. May

16, 2013) (*citing DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir.

1987)). Further, "[a]bsent prejudice, or a strong showing of any of the remaining

[Rule 15] factors, there exists a presumption under Rule 15(a) in favor of granting

leave to amend." *Eminence Capital, LLC v. Aspeon, Inc*., 316 F.3d 1048, 1052 (9th

Cir. 2003) (emphasis in original) (citation omitted).

     Neither of Ortega's motions were filed within a year of the date his

conviction became final. Thus, his motions may only be considered timely after the

one-year statute of limitations has run if his proposed amendments "relate back" to

the original claims in his Underlying Motion. *See* Fed. R. Civ. P. 15(c). "An

amendment to a pleading relates back to the date of the original pleading when . . .

the amendment asserts a claim or defense that arose out of the conduct, transaction,

or occurrence set out—or attempted to be set out—in the original pleading." Fed.

R. Civ. P. 15(c)(1); *see also Mayle*, 545 U.S. at 664 (holding, in the context of a

federal habeas petition, that "[s]o long as the original and amended petitions state

claims that are tied to a common core of operative facts, relation back will be in order."). "An amended habeas petition . . . does not relate back  . . . when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Schneider v. McDaniel*, 674 F.3d 1144, 1150 (9th Cir. 2012) (quoting *Mayle*, 545 U.S. at 650; internal quotation marks omitted).

### 2. Counsel's Alleged Ineffective Performance Related to Ortega's Motion to Withdraw his Guilty Plea

The Court will begin with the second-filed motion, in which Ortega says his plea was invalid because he never understood he was pleading to conspiracy to distribute methamphetamine (as opposed to marijuana). *See* Cr. Dkt. 124. Ortega argues that attorney Kelly Kumm was ineffective in arguing this issue during the plea-withdrawal hearing. He thus urges the Court to reconsider its earlier ruling.

After having considered the factors outlined above, the Court will not allow Ortega to amend his § 2255 to add this claim. First, Ortega unduly delayed in bringing this motion. He filed the motion in January 2023—nearly two years after this Court had already denied Ortega's claim that Mr. Kumm rendered ineffective assistance of counsel. *See* Civ. Dkt. 52, at 29-32. Moreover, in denying the claim regarding Mr. Kumm's performance, the Court considered and rejected arguments substantially similar to the ones Ortega seeks to advance. *See, e.g., Motion,* Civ. Dkt. 7-4, at 52-54 (arguing that Kumm failed to protect Ortega during the plea withdrawal hearing); *See Feb. 2, 2021 Order,* Civ. Dkt. 52, at 29-30. Finally, the

requested amendment would also be futile because although Ortega says Kumm
made only a "token effort in his representation of Ortega during the motion to
withdraw the guilty plea, . . ." Cr. Dkt. 124, at 9, Kumm argued the very points
Ortega says he should have argued. In the motion to withdraw the guilty plea,
Kumm said this:

> Ortega advised the court during his change of plea hearing that he did
> not, at any time, know that there was methamphetamine being
> transported in the vehicle in which he was riding at the time of the
> stop. He was advised by the co-defendant's parents that the substance
> being transported was marijuana. While Ortega believed he was
> pleading guilty to a "drug" conspiracy, he did not believe nor did he
> understand that he was pleading guilty to a conspiracy to distribute
> methamphetamine.

*Motion,* Cr. Dkt. 50, at 2-3. Appellate counsel repeated a similar argument on
appeal, saying that this Court erred in not allowing Ortega to withdraw his plea
because, among other things, Ortega "steadfastly claimed that it was his belief that
the drug that was being transported was marijuana rather than methamphetamine."
*Opening Br.,* at 16, Dkt. 23 in 9th Cir. Case No. 15-30397. As noted above, the
Circuit dismissed the appeal because of the valid waiver in the plea agreement.
Additionally, the Ninth Circuit stated that "the record does not support Ortega's
contentions that his plea was involuntary or that the government breached the plea
agreement." *See Apr. 24, 2017 Order*, Cr. Dkt. 90. Granted, the Ninth Circuit did
not reach any issues as to ineffective assistance of counsel, but the larger point is

that Kumm *did* make the argument Ortega says he should have made and, despite that argument, both this Court and the Ninth Circuit concluded that Ortega voluntarily pleaded guilty to the charged offense. The Court will therefore deny Ortega's renewed efforts to advance this claim.

### 3.  Counsel's Alleged Ineffectiveness in Memorializing the Terms of the Plea Agreement

Likewise, the Court will deny Ortega's motion to add a claim that attorney Rivera was ineffective because he failed to ensure that the plea agreement contained a provision barring the government from pursuing a § 924(c) charge against him. *See* Cr. Dkt. 115. The Court will deny this motion because such an amendment would be futile. Further, the arguments made in this motion duplicate arguments Ortega has already advanced in these proceedings.[7] *See Reply Br.*, Civ. Dkt. 41, at 2-5.

Ortega's motion is flawed at the outset because he focuses on the wrong standard. He says the failure to include such a provision in the plea agreement was a "fair and just" reason for withdrawal of his plea agreement. At this point, however, the Court does not have jurisdiction to reconsider its denial of Ortega's

---

[7] Ortega filed a substantially similar motion earlier in these proceedings, which the Court denied. *See* Cr. Dkts. 102, 110 For the sake of completeness, however, the Court will further explain its reasons for denying the motion here.

motion to withdraw his guilty plea. *See generally United States v. Vromani,* 997 F.2d 627, 627 (9th Cir. 1993) (holding that the district court lacked jurisdiction to consider defendant's motion for reconsideration because he filed the motion after having filed a notice of appeal); *see also United States v. Farley*, 72 F.3d 158, 162 n.3 (D.C. Cir. 1995). So the Court cannot simply evaluate whether Ortega had a "fair and just" reason for withdrawing his plea. Rather, in the context of this § 2255 proceeding, the question is whether Rivera performed deficiently and, if so, whether Ortega was prejudiced. *See generally* Fed. R. Civ. P. 11(e).[8] Ortega does not directly address that standard in his pending motion.

Here, even assuming Rivera performed deficiently in this regard (by not ensuring that the plea agreement memorialized the prosecutor's agreement not to pursue Ortega on a § 924(c) charge), Ortega cannot establish prejudice. Throughout these proceedings, Ortega has consistently and repeatedly asserted his theory of prejudice—namely, that that he would have risked trial if he had only known that he faced a 10-year mandatory minimum rather than a 25-year mandatory minimum. Although he now says this plea agreement should have contained additional terms, if he had rejected it, he still would have faced that

---

[8] Federal Rule of Criminal Procedure 11(e) provides that "[a]fter the court imposes sentence, the defendant may not withdraw a plea of guilty . . . and the plea may be set aside only on direct appeal or collateral attack."

feared 25-year mandatory minimum. So it's not logical to conclude, *post hoc*, that

he would have risked a trial. Such a conclusion is contrary to the Supreme Court's

guidance in *Lee v. United States,* where the Court explained that "Courts should

not upset a plea solely because of *post hoc* assertions from a defendant about how

he would have pleaded but for his attorney's deficiencies. Judges should instead

look to contemporaneous evidence to substantiate a defendant's expressed

preferences." 582 U.S. at 369. To be sure, in the immigration context, the Ninth

Circuit has recognized that a § 2255 movant might be able to establish prejudice by

showing that, but for counsel's deficient advice, he would have secured a more

favorable plea bargain. *See United States v. Rodriguez-Vega,* 797 F.3d 781, 788-90

(9th Cir. 2015) (allowing a defendant to show *Strickland* prejudice either by

demonstrating that "there existed a reasonable probability of negotiating a better

plea by identifying cases indicating a willingness by the government to permit

defendants charged with the same or a substantially similar crime to plead guilty to

a non-removable offense" or "by showing that she settled on a charge in a

purposeful attempt to avoid an adverse effect on her immigration status"—all

while holding, in the alternative, that the defendant established prejudice because

she demonstrated a reasonable probability she would have gone to trial "in the

absence of a more favorable plea agreement"). But given the contemporaneous

evidence in this case, it's not reasonable to conclude that Ortega would have

insisted upon a more favorable plea bargain. Rather, the more likely outcome would be that, at most, he would have insisted that the written plea agreement reflect the deal the parties had reached.

It's also notable that the government never pursued Ortega on a § 924(c) charge, and Ortega has conceded that the statute of limitations for such a charge expired in July 2019. Nor did the government file an information under § 851, which would have allowed it to double the underlying mandatory 10-year mandatory minimum to 20 years. *See generally* 18 U.S.C. § 851(a)(1) (requiring government to file information listing previous convictions before trial or before entry of guilty plea). Ortega thus received the key benefits he was hoping to achieve by pleading guilty to one of the charges in the indictment. By pleading guilty, he was able to ensure that he faced only a 10-year mandatory minimum, with the possibility of a lesser sentence if he cooperated.

Ortega's argument on this point is further defective because it relies, in part, on his assertion that Rivera failed to discuss the details of the 25-year mandatory-minimum calculation with him. But after hearing the testimony offered at the evidentiary hearing, the Court concluded that Rivera did relay those details to Ortega. Thus, as a factual matter, at the time he pleaded guilty, Ortega was well aware that he risked a potential § 924(c) charge (as well as § 851 enhancement) if he decided to stand trial.

For all these reasons, the Court will deny Ortega's motion to reconsider the denial of his motion to withdraw his guilty plea, which the Court construed as a motion to amend.

## ORDER

**IT IS ORDERED that:**

1. Movant Uriel Jose Ortega's Motion to Set Aside Judgment (Civ. Dkt. 1; Cr. Dkt. 94) is **DENIED IN ITS ENTIRETY**.

2. The Court **DECLINES TO ISSUE A CERTIFICATE OF APPEALABILITY**.

3. The Court will enter judgment separately.

4. Ortega's Motions to Reconsider (Cr. Dkts. 115, 124) are **DENIED.**

5. Ortega's Petition to Expedite (Civ. Dkt. 110) and Motion for Status Report or Hearing (Civ. Dkt. 111) are **DEEMED MOOT.**

DATED: September 1, 2023

B. Lynn Winmill
U.S. District Court Judge